STATE v. HEBER HARDY AND KATIE HARDY.

(Filed 11 December, 1935.)

1. **Intoxicating Liquor G c: Criminal Law G m—Evidence of possession of intoxicating liquor on prior occasions within year held competent.**

   In a prosecution for unlawful possession of intoxicating liquor evidence that officers of the law had found liquor on defendants' premises on two previous occasions within a year of the occasion made the basis of the prosecution is competent on the question of knowledge and motive.

2. **Intoxicating Liquor B a—Person may possess intoxicating liquor for personal consumption only in structure used exclusively as dwelling.**

   The provision of N. C. Code, 3411 (j), that a person may legally possess intoxicating liquor in his dwelling for his personal consumption and the consumption of his family and *bona fide* guests is limited by the terms of the statute to a private dwelling occupied and used exclusively as a dwelling, and a person may not lawfully possess intoxicating liquor in a building or structure used and operated by such person as a filling station and dwelling combined when the parts of the structure used for the respective purposes are connected.

3. **Intoxicating Liquor B d—**

   Where a husband has knowledge of his wife's illegal possession of intoxicating liquor on the premises, and permits her to keep it there, the husband is equally guilty with the wife of illegal possession.

4. **Criminal Law A c: Intoxicating Liquor G e—**

   Defendants were indicted, tried, and convicted of having illegal possession of intoxicating liquor before the effective date of a statute repealing the prohibition statute in the county. *Held:* The repeal of the statute after the conviction of defendants does not entitle defendants to be discharged.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Barnhill, J.,* and a jury, at April Term, 1935, of PITT. No error.

This was a criminal action, begun on a warrant issued in the county court of Pitt County, charging the defendants with receiving, transporting, and possessing whiskey for the purpose of sale. There was a verdict of "Guilty" in the county court, and the defendants appealed to the Superior Court. The case came on to be tried at the April Term, 1935, of the Superior Court of Pitt County, before Hon. M. V. Barnhill, judge presiding, and a jury. There was a verdict of "Guilty of possession of liquor for the purpose of sale."

*The facts:* The defendants lived at the intersection of Simpson and Washington highways in Pitt County. The living quarters were downstairs in the back of the store, a cafe and filling station were in the front,

facing the highway. The evidence on the part of the sheriff and his deputy was to the effect that they searched the place on Saturday morning, 14 October, 1934. Heber Hardy was not present, but his wife, Katie Hardy, was. Behind the counter was found by the sheriff 8 or 10 bottles recently emptied. The deputy found in the kitchen a gallon jar about half full of whiskey, and also found 3 or 4 empty pint bottles in the kitchen sitting around at various places. In the back was found a ten-gallon keg that smelled very strong of whiskey, and along a path leading across the road and into the woods was found a five-gallon demijohn with about a half-pint of whiskey and some dried apples in the bottom of it. This was about 130 feet from the service station. The empty bottles were strewn around the woods—pint and half-pint bottles. There were connecting doors from the filling station to the residence. They were built there together, there was a door from the residence into the filling station. "Court: Q. There were connecting doors from the filling station to the residence, you say? A. Yes, sir; they were all built together; there was a door from the residence into the filling station."

The deputy sheriff testified, in part: "Q. Did you search Mr. Hardy's station on other occasions? A. Yes, sir. On one occasion we found about five quarts of whiskey in a candy jar. The candy jar was in the bedroom. We searched another time and found the same jar about half full of whiskey in the bedroom. We have made three or four searches." In due time the defendants objected to the foregoing question and answer. Admitted on question of motive or *scienter.* Objection overruled, and the defendants excepted.

The defendant Katie Hardy testified, in part: "I have not sold any whiskey there. I have not had any whiskey there for sale. I did not have the whiskey there that Mr. Pierce found for sale. I had it there for my own use. I have not sold whiskey to anyone at any time. I have never sold it in my life."

The defendant Heber Hardy testified, in part: "I did not know my wife had that whiskey there. It was not my whiskey. I did not buy it. I heard what Sheriff Whitehurst said about finding some bottles in the front room, store. I don't remember whether there were any there or not. There might have been. We sold vinegar and we kept it there by the barrel, and we bought bottles at different times, and used them to put vinegar in. I have not at any time had any whiskey there for sale. I have not sold any whiskey there. I heard what Mr. Pierce said, about finding a large jug or demijohn across the road in the woods, with some whiskey in it. I don't know anything about it. I did not put it out there. That was not my land out there. . . . My wife said this whiskey was in her bedroom. By the bed. I went in there occasionally.

I don't remember whether I saw it there or not. I know she keeps it. That room was her bedroom. Where she and the children slept. That room was independent of the store. There are partition walls between those rooms and the front. Or store rooms. We live in the back part, and the front we use for a station or store. We did not have any other living quarters. But those rooms. We lived in those rooms day and night. . . . I have been indicted two or three times. I think that is about all. I think I was raided out there three times. On one occasion I think they found some whiskey in a candy jar. And on another occasion they found some in a candy jar. One time they found some beer but I was not there. The first time they found some whiskey there they fined me twenty-five dollars, and the second time they turned me loose. This is the third time. . . . The building was used partly as a store and partly as a residence, we lived in the back. The front was the store. A wall cut off the living rooms from the store, and we lived in the back rooms."

It was in evidence that the general reputation of Heber Hardy is bad, and Katie Hardy's reputation for selling whiskey is bad.

The court below rendered judgment on the verdict. The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be set forth in the opinion.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Julius Brown for defendants.*

CLARKSON, J. The exceptions and assignments of error by defendants as to the prior searches of defendants' premises cannot be sustained.

In *S. v. Murphy,* 84 N. C., 742 (743-4), it is said: "It is a fundamental principle of law that evidence of one offense cannot be given in evidence against a defendant to prove that he was guilty of another. We have been unable to find any exception to this well established rule; except in those cases where evidence of independent offenses have been admitted to explain or illustrate the facts upon which certain indictments are founded, as where, in the investigation of an offense, it becomes necessary to prove the *quo animo,* the intent, design, or guilty knowledge, etc. In such cases it has been held admissible to prove other offenses of like character," etc. *S. v. Jeffries,* 117 N. C., 727; *S. v. Simons,* 178 N. C., 679; *S. v. Crouse,* 182 N. C., 835; *S. v. Miller,* 189 N. C., 695 (696); *S. v. Dail,* 191 N. C., 231 (232).

In *S. v. Boynton,* 155 N. C., 456 (459-460), it is said: "The State, over defendant's objection, was allowed to show by Watt Britt, J. B. Bryson, and others, that at some time prior to this alleged sale, and

within twelve months, defendant had whiskey in his possession in different quarters and in places in Asheville, N. C., and that at the business places under control and management of defendant," etc. *Hoke, J.,* at p. 461, says: "It tended to show that defendant had and kept whiskey on hand, in prohibited territory, and was prepared and equipped to make the illegal sale charged in the bill of indictment. . . . In 7 Encyclopedia of Evidence, p. 760, the author says: 'Of course, the possession of liquors by the defendant, at the time of the offense charged, is always a circumstance admissible against him, and in general the circumstances under which liquors are kept, and even that they are kept at other places or in other rooms, may be shown.' "

The defendant Katie Hardy's testimony was to the effect: "We have been there a little over a year, I reckon." *S. v. Beam,* 184 N. C., 740, cited by defendants, is inapplicable. In that case the prior crime had been committed 11 years before the one for which defendant was indicted. This was too remote. In the present case the searches were within about one year.

N. C. Code of 1935 (Michie), sec. 3411 (j), is as follows: "The possession of liquor by any person not legally permitted under this article to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this article. But it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only. Provided, such liquor is for the personal consumption of the owner thereof, and his family residing in such dwelling, and of his *bona fide* guests when entertained by him therein."

On this aspect the court charged the jury as follows: "Under that warrant three verdicts are possible, guilty as charged, guilty of having whiskey in their possession for the purpose of sale, or guilty of unlawful possession, or not guilty, as you find the facts to be, except as to the defendant Katie Hardy. She admits that she had a certain quantity of whiskey in her possession. The State makes that unlawful, unless she had it in her private dwelling; when the place is occupied as a dwelling only, and according to the evidence in this case this building was not occupied solely as a private dwelling. Whether the Legislature was wise or unwise in passing that law is not for the court or the jury to say. We have no right to change it even though we do not agree with it. . . . Therefore, the court instructs you if you believe what she says about it and find from her testimony and the testimony of officers that she had any quantity of whiskey in her possession, then it would be your duty to return a verdict of guilty of unlawful possession as to the defendant Katie Hardy." The defendants excepted and assigned error to the above portion of the charge.

The act clearly says: "But it shall not be unlawful to possess in one's private dwelling while the same is occupied and used by him as his dwelling only," etc. All the evidence is to the effect that the filling station with bedroom and kitchen were connected and used together. The building *"is not occupied and used by him as his dwelling only."* The statute was no doubt passed to cover the very situation as shown in this case.

The court charged the jury as follows: "If you find from the evidence and beyond a reasonable doubt that Katie Hardy had in her possession on the premises occupied by Heber Hardy, and that he knew she had it there and permitted her to keep it there, then upon that finding it would be your duty to return a verdict of guilty of unlawful possession against him. Because any person who aids and abets another in an offense is equally guilty with the person who committed the act; so if you find from the evidence and beyond a reasonable doubt that he knew she had the liquor there and permitted her to keep it on his premises, a quantity of intoxicating liquor, then that would make him equally guilty." The defendants excepted and assigned error. We do not think that this exception and assignment of error can be sustained.

The rule applicable here is aptly stated in 33 C. J., p. 607, part section 237, "Intoxicating Liquors," as follows: "Unless it is otherwise as the result of statutory enactments, a husband is criminally responsible for illegal sales, or other infractions of the liquor laws, made or done by his wife in his presence, or by his command, or with his knowledge and consent, or when she acts as his servant or agent. And, where a wife keeps in the house of her husband or in the premises which are occupied and controlled by him intoxicating liquors for sale in violation of law, he is criminally liable, if he has knowledge of her intent, unless he uses reasonable means to prevent her from carrying out such intent  .  .  . (p. 608). But the husband has been held liable where the wife, upon her sole responsibility and for her sole benefit, carried on the business of selling liquors illegally in a house occupied by them as a residence, with his knowledge but without his assent, or even though he had often remonstrated with her against making such sales," etc. *People v. Duchow* (Ill.), 163 N. E., 352; *Commonwealth v. Hyland* (Mass.), 28 N. E., 1055; *Commonwealth v. Walsh* (Mass.), 42 N. E., 500; *United States v. Bonham* (S. C.), 31 Fed., 808. In *Buchanan v. State* (Ga.), 128 S. E., 686, it is said: "In this state the husband is recognized by law as the head of the family, and where intoxicating liquors are kept in the house occupied by himself and his family, he is guilty of aiding and abetting in the commission of a misdemeanor, if he knowingly allows such liquors to remain there, irrespective of who owns them or who put them there." *S. v. Myers,* 190 N. C., 239 (243); *S. v. Mull,* 193 N. C., 668 (670).

These defendants were charged with the offense on 14 October, 1934, and convicted and judgment pronounced at April Term, 1935. On this aspect the contention of defendants cannot be sustained. *S. v. Perkins,* 141 N. C., 797 (809); *S. v. Mull,* 178 N. C., 748; *S. v. Foster,* 185 N. C., 674.

For the reasons given, in the judgment of the court below there is No error.

DEVIN, J., took no part in the consideration or decision of this case.